UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBBYNE JONES, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-24 SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 13. Defendant filed a Brief in Support of the Answer. ECF No. 14. Plaintiff filed a Reply. ECF No. 15. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On June 18, 2020, Plaintiff Robbyne Jones protectively filed applications for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income

---

[1] At the time this case was filed, Kilolo Kijakazi was the Commissioner of Social Security. Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Martin J. O'Malley for Kilolo Kijakazi in this matter.

under Title XVI, 42 U.S.C. §§ 1381, *et seq.,* with an alleged onset date of May 1, 2019.[2] Tr. 15, 89-90, 177-219, 236. Plaintiff's application was denied on initial consideration and reconsideration. Tr. 68-101, 108-11. On May 26, 2021, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 132-33.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on October 28, 2021. Tr. 32-67. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Vanessa May, M.S., CRC. *Id*. at 62-65. On January 13, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 12-31. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 195-97. On November 16, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

---

[2] Plaintiff's original onset date of disability was April 28, 2020, but he later amended it to May 1, 2019. *See* Tr. 16, 39, 69, 236.

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

3

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

4

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2019. Tr. 18. Plaintiff has not engaged in substantial gainful activity since May 1, 2019, the amended alleged onset date. *Id*. Plaintiff has the severe impairments of "degenerative disc disease, bilateral osteoarthritis of the knees, and obesity." Tr. 18-19. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 19-20. The ALJ found Plaintiff had the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)" without any limitations through the date last insured. Tr. 20-25.

5

The ALJ found Plaintiff is capable of performing past relevant work as a production helper (DOT No. 529.686-070) because such work does not require work-related activities precluded by his RFC. Tr. 25-26. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2019 through the date of his decision, issued on January 13, 2022. Tr. 26.

**IV.    Discussion**

Plaintiff presents two assignments of error: (1) the ALJ failed to properly address his documented chronic pain syndrome which caused the omission of additional RFC limitations; and (2) the ALJ failed to sufficiently assess his "credibility."

**A. Chronic Pain Syndrome**

Plaintiff argues the ALJ committed reversible error by omitting a discussion of whether his chronic pain syndrome was a medically determinable impairment at Step 2 of the sequential analysis. ECF No. 13. The ALJ found Plaintiff had the severe impairments of degenerative disc disease, bilateral osteoarthritis of the knees, and obesity, and the non-severe impairments of hypertension, shoulder pain, and chronic fatigue syndrome. Tr. 18-19. Plaintiff contends that had the ALJ considered chronic pain syndrome as a severe impairment he would have been assigned greater RFC limitations. Plaintiff points to various medical records and his own testimony related to pain, which he argues evidence a sedentary work restriction, rather than a light work restriction. In response, the Commissioner argues that the ALJ's failure to include chronic pain syndrome as a severe impairment is not erroneous because the decision includes an in depth discussion of Plaintiff's chronic pain.

At Step Two of the sequential evaluation process, the ALJ is required to consider whether a claimant has met the burden of demonstrating that his or her impairments are "medically

6

determinable" and whether such impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). The existence of a medically determinable impairment cannot be established merely by a claimant's "statement of symptoms, a diagnosis, or a medical opinion," and must instead be "established by objective medical evidence." 20 C.F.R. §§ 404.1521, 416.921. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical laboratory diagnostic techniques." *Id*. Only after the establishment of a medically determinable impairment does an ALJ determine whether that impairment is "severe." That said, when formulating the RFC, an ALJ must consider "all . . . medically determinable impairments," including "medically determinable impairments that are not 'severe[.]' " 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Eighth Circuit "precedent indicates that the failure to list a specific impairment at Step Two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018) (citing *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)). Further, courts in this District have held "the ALJ's failure to list all the severe impairments at Step Two is harmless, so long as the ALJ adequately discusses the effects of those impairments at the subsequent steps." *Rouse v. Berryhill*, 2019 WL 1359384, at *6 (E.D. Mo. Mar. 26, 2019); *see also Weed v. Saul*, 2019 WL 4451259, at *4 (E.D. Mo. Sept. 17, 2019) (finding harmless error where ALJ proceeded with the analysis and considered all of claimant's symptoms, including those symptoms which overlapped with her severe impairments); *Givans v. Astrue*, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (finding the ALJ's step two determination was harmless where review of the decision showed the ALJ considered claimant's complaints and symptoms in the RFC analysis).

Here, in formulating the RFC, the ALJ not only acknowledged Plaintiff's allegations regarding his inability to work due to chronic pain in his knees, neck, and back, but also reviewed and incorporated detailed medical records regarding his chronic pain into the RFC analysis.

The ALJ considered Plaintiff's December 12, 2020, disability consultation examination with Dr. Nicholas Evans, in which Plaintiff reported having low back and shoulder pain since 1996 and knee pain since 2005, resulting from two unrelated work accidents, and a torn meniscus from falling on ice in 2006. Tr. 21 (citing Tr. 310-15). Plaintiff reported he stayed in bed 16 to 18 hours per day, although his pain would improve upon applying ice or taking a warm bath. Tr. 310. Dr. Evans observed Plaintiff "was able to walk around the room without an assistive device with an antalgic gait," exhibited normal muscle bulk and tone, and could grasp objects, put on and remove his shoes, and rise from a seated position without difficulty. Tr. 21, 311. However, Plaintiff was not, able to toe or heal walk, or squat. *Id.* He was tender to palpation in the lumbar and cervical spine, reported pain with change in positions, had difficulties getting on and off the exam table, and was unable to tolerate lying flat on his back for a supine straight leg raise. *Id.* He exhibited 5/5 strength on all testing and had full range of motion in the shoulders and knees. Tr. 312.

The ALJ discussed the hearing testimony in which Plaintiff described his chronic pain. Tr. 21 (citing Tr. 32-66). Plaintiff said his back felt "locked like it's in a spasm" with pain radiating to his legs. Tr. 21, 47. He claimed that twice per month his back would lock up, and he would need to spend the entire day in bed. Tr. 21, 50. He stated he suffered from swollen knees "pretty much every other day," requiring him to lie down or recline six hours in an eight-hour work day while he elevated his legs and iced the swollen areas. Tr. 21, 49. He testified to having

8

a walker to assist him with balance and ambulation, which he got from his mother because she had "a few of them." Tr. 21, 47-48, 57-58. Plaintiff estimated he could lift approximately 10 to 15 pounds, sit upright for approximately 10 minutes, and could likely stand for about 15 minutes and walk for about 7 to 8 minutes if he had his walker. Tr. 21, 52-54. As for activities of daily living, he indicated that although he lived alone, he needed his girlfriend's assistance to get in and out of the shower, to cook, and to clean. Tr. 21, 41, 45.

On May 7, 2021, almost two years after his last date insured, Plaintiff obtained an X-ray of his lumber spine and both knees. Tr. 22, 318-20. The lumbar imaging revealed normal alignment without spondylolisthesis, severe degenerative changes L5-S1, and moderate degenerative changes L3-L4, L4-L5, and degeneration of the thoracic spine. Tr. 318. The left and right knee imaging revealed moderate tricompartmental degenerative changes, no fracture or dislocation, with a small effusion on the right knee. Tr. 319-20. These X-rays showed degenerative disease. *Id.* at 318-20.

Although Plaintiff alleged an onset date of May 1, 2019, he did not establish care with a treating provider until August 23, 2021. Tr. 22, 393-402. At his hearing, Plaintiff explained that he did not seek earlier treatment because he did not have insurance until he signed up for "Obamacare." Tr. 38. In the fall of 2021, doctors noted the "visual overview of all four extremities" appeared normal, Tr. 365, 388, and diagnosed Plaintiff with issues including chronic pain syndrome, obesity, knee pain, neck pain, low back pain, and hypertension. Tr. 324-402. Plaintiff expressed no interest in non-narcotic treatment options, despite his provider's recommendation to treat his pain with bilateral knee injections, a chiropractic and orthopedic evaluation, and occupational therapy. Tr. 22, 391. In fact, on his first visit with a primary care physician ("PCP"), Plaintiff declined a well examination, lab work, and a colon screening and

only wanted to discuss his pain. Tr. 395. Specifically, the doctor notes that Plaintiff "states he is not here for all of that, nothing is wrong with him, he is here for pain, patient declined well visit." *Id.*

As the ALJ observed, there is no indication in the medical record that Plaintiff saw an orthopedic specialist or had any injections. Tr. 22. The ALJ additionally took note that during the initial PCP visit Plaintiff mentioned difficulties with putting on his shoes; however, at the earlier consultative examination, Dr. Evans noted Plaintiff's ability to put on and remove his shoes with no difficulty. Tr. 22 (comparing Tr. 311 to Tr. 391).

Plaintiff did visit with chiropractor Dr. Patrick Battaglia on September 1, 2021. Tr. 376-89. Plaintiff described severe widespread pain in his neck, back and legs. Tr. 22, 376. Dr. Battaglia wrote: "Has expectations that once disability approved, will 'get better insurance' and 'have more options.' By options, he means more narcotic medicine." *Id.* Upon a musculoskeletal examination, he was described to have a slow gait, slow transition from sit to stand, and inability to tandem walk. *Id.* Plaintiff was observed to have normal muscle bulk and tone, 5/5 motor strength, and 3/5 foot and ankle strength. *Id.*

Additional radiological imaging was ordered. Tr. 22, 371-73. Cervical spine imaging reflected "severe degenerative disc disease including posterior end plate spurring and intervertebral foraminal encroachment at C5-C6 and C6-C7," "lesser degree of degenerative disc disease noted at C4-C5 and C7-T1," and "incomplete anterior osteophytic spurring/bridging most evident at C5-C6 and C6-C7." Tr. 371. Right knee imaging revealed "tricompartmental arthritic changes." Tr. 372. Lumbar spine imaging revealed "severe degenerative disc disease at L5-S1," while the "remaining disc spaces and all of the lumbar vertebrae appear relatively normal in height with satisfactory alignment." Tr. 373.

On September 8, 2021, Plaintiff returned to Dr. Battaglia. Tr. 22, 363-69. He was observed to have "regions of segmental dysfunction as established by focal Pain and Range of motion restrictions into extension, flexion, and rotation," specifically at the C5/6, T6/7, and L4/5. Tr. 22, 365. However, Dr. Battaglia noted that a visual overview of all of his extremities were normal, and he exhibited a normal range of motion in his cervical spine, thoracic spine, lumbar spine, and shoulders. *Id.* As to spinal pain, the treatment notes indicated he should undergo a "trial of conservative care" because his condition was "complicated by chronicity, deconditioning, and [a] pending SSDI [Social Security Disability Insurance]" claim. *Id.*

On September 10, 2021, Plaintiff attended the first of three visits with Occupational Therapist Bernadette Sheffield. Tr. 22-23, 346-59. Plaintiff's balance and mobility was assessed, and he was described to be a "high fall risk." Tr. 22, 354. During the assessment, Plaintiff asked for a break, which the ALJ noted to be "different than his presentation at the consultative examination in December 2020, at which time the [Plaintiff] was able to walk unassisted, albeit with an antalgic gait, and did not need any break during the examination." Tr. 23 (comparing Tr. 311 to Tr. 357). Upon physical examination, Plaintiff was noted to experience painful range of motion in some areas, with no pain in others, and a decreased use of upper and lower extremities. Tr. 348, 357. However, his upper and lower extremities, exhibited normal strength. Tr. 348.

On September 27, 2021, Plaintiff told Dr. Battaglia he experienced functional improvement from the three occupational therapy sessions. Tr. 23, 328. On October 4, 2021, Dr. Battaglia performed a musculoskeletal examination and described Plaintiff to be in "mild distress 2/2 pain." Tr. 326. The ALJ noted that while the above records observed him to be utilizing a wheeled walker, none of the providers appeared to have prescribed the ambulation device or endorsed it as medically necessary. Tr. 22 (citing Tr. 337, 344, 348, 357, 365, 395).

11

In formulating the RFC, the ALJ cited to every medical record submitted by the Plaintiff, as summarized above, and expressly addressed his issues with chronic pain. The ALJ found it relevant that Plaintiff's allegations of chronic lower back, neck, and knee pain resulted from injuries sustained in 1996, 2005, and 2006, but he was able to maintain employment until 2019. Tr. 23. The ALJ also found it notable that there were "multiple inconsistencies between his allegations and his treatment records and/or between his own presentation at medical examinations." *Id.* For example, the ALJ compared the December 2020 consultation examination where Plaintiff was able to ambulate without a walker and had an ability to grasp objects and tie his shoes, to the 2021 records where he was using his mother's walker, described as a fall risk, and reported issues with dressing himself. Tr. 23-24. Although Plaintiff testified to swelling in his knees requiring him to elevate his knees, there is no physician observation of edema or knee swelling in the record. Tr. 23. Further, his 2021 treatment notes reveal normal muscle bulk and tone, 5/5 motor strength, and 3/5 foot and ankle strength. *Id.* Tr. 326.

The ALJ also considered that Plaintiff's motives for treatment may have been, in part, due to a desire for a narcotic prescription as suspected by his chiropractor, Dr. Battaglia. Tr. 22, 376. As for his testimony related to limited activities of daily living, the ALJ found it "noteworthy that he also alleged that he lived alone, with his girlfriend coming over periodically to help him out, [which is] suggestive of [a] greater level of independence than he alleged." Tr. 23-24. Additionally, Plaintiff expressed functional improvements from the occupational therapy sessions, *see* Tr. 328, but failed to report any such improvements during his hearing testimony. Tr. 24.

The ALJ then analyzed the RFC Assessment completed by Dr. Dennis McGraw, a State agent medical consultant. Tr. 24, 73-77, 84-88. Dr. McGraw opined Plaintiff could occasionally

lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk with normal breaks for about 6 hours in an 8-hour workday, sit with normal breaks for about 6 hours in an 8-hour workday, and push and/or pull with no limitations. Tr. 24, 74-75, 84-85. Dr. McGraw supported his RFC Assessment by citing to his December 2020 consultation in which a physical examination revealed no palpable joint tenderness, normal bulk and tone, an antalgic gait, inability to squat, 5/5 strength in all extremities, limited range of motion in his lumbar and cervical spine, experiences pain when changed positions, and difficulty rising from a seated position. Tr. 75, 86. At the time Dr. McGraw provided his opinion, Plaintiff had yet to seek medical attention for his alleged impairments, and it was notable that he worked until April of 2020, when he reported being terminated from work due to the COVID-19 pandemic. *Id.* Dr. McGraw also considered Plaintiff's inconsistent report that he was unable to lie flat at the 2020 consultation but later stated he spends 16-18 hours per day in bed. *Id.* The ALJ found Dr. McGraw's Assessment to be persuasive because "it was well supported by the explanation provided in the narrative and [his] expertise in the medical field and evaluating disability claims." Tr. 24. The ALJ also determined that his opinion was consistent with the medical record.

      Finally, the ALJ analyzed Dr. Nancy Weber-Bornstein's prior administrative medical findings as the medical consultant of record. Tr. 25, 91-101. At the reconsideration level as to Plaintiff's Title II application, Dr. Weber-Bornstein found there was insufficient evidence to form an opinion about Plaintiff's functional limitations before June 30, 2019, the date last insured. Tr. 93. Addressing Plaintiff's Title XVI application, Dr. Weber-Bornstein opined that Plaintiff had the capacity to lift/carry up to twenty pounds occasionally and ten pounds

13

frequently, but she limited standing and/or walking to four hours within an eight hour workday. Tr. 99.

The ALJ found Dr. Weber-Bornsteins' findings to be somewhat persuasive as to the limitations on lifting and carrying because they were well supported by the explanation and consistent with the record as a whole, "which shows that the Plaintiff does have severe impairments, but that his subjective reports were not entirely consistent with the objective treatment records." Tr. 25. However, the ALJ found the additional limitations determined by Dr. Weber-Bornstein as to standing and/or walking not persuasive because the narrative of the doctor's opinion lacks an explanation for the additional limits on standing/walking, simply noting the findings on imaging showing degenerative disc disease in the spine and degenerative changes in his knees. Tr. 25. The ALJ further found her opinion to be inconsistent with Dr. Evan's December 2020 consultative examination, which stated that Plaintiff was able to walk unassisted with an antalgic gait and exhibited normal extremity strength and sensation. *Id*.

While Plaintiff argues the ALJ committed reversible error by failing to consider Plaintiff's diagnoses of chronic pain at Step Two, the Court cannot agree that remand is appropriate. Courts have held an error at Step Two may be harmless if the ALJ nonetheless considered all of a plaintiff's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and non-severe in determining plaintiff's RFC."). Moreover, "[t]he Eighth Circuit's harmless error analysis hinges on whether the ALJ would have decided the case differently had the error not occurred." *Rouse*, 2019 WL 1359384, at *6 (citing *Byes v. Astrue*,

14

687 F.3d 913, 917 (8th Cir. 2012); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)). "Thus, even if an ALJ fails to list all severe impairments at Step Two, the outcome of the case would not change if the ALJ properly considers the effects of all impairments during subsequent steps." *Id.*

In the present case, at Step Two of the sequential evaluation, the ALJ determined Plaintiff has the severe impairments of degenerative disc disease, bilateral osteoarthritis of the knees, and obesity. Tr. 18. Although chronic pain syndrome was not included as a severe impairment, the ALJ's decision includes a detailed discussion of Plaintiff's pain related to his 1996 and 2005 work injuries, his 2006 fall on ice, and diagnoses of degenerative disc disease and osteoarthritis. The ALJ considered and discussed numerous medical records related to Plaintiff's chronic pain syndrome. *See Bryant v. Astrue*, 2013 WL 571761, at *4 (E.D. Mo. Feb. 13, 2013) ("ALJ's failure to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis").

Thus, even if the ALJ technically erred in not explicitly including chronic pain syndrome in Step Two, given the ALJ's extensive inclusion and discussion of Plaintiff's pain in his subsequent analysis, the ALJ's failure to include them at Step Two was, at most, a harmless error. *See, e.g., Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Lorence v. Astrue*, 691 F. Supp.2d 1008, 1028 (D. Minn. 2010). The ALJ discussed in great detail Plaintiff's reports of chronic pain, the medical records related to those complaints, and the inconsistencies between both. The ALJ discussed Plaintiff's alleged inability to work due to chronic pain in his knees, neck, and back; his provider's use of "conservative care" to treat his pain symptoms; unremarkable physical examinations; the lack of prescription for an ambulation device; his failure to seek treatment with an orthopedic specialist or obtain pain injections as

recommended by his physician; inconsistencies between his reports of pain and limitations and observations from a consultative examination; and his ability to maintain employment for several years with his diagnoses. Tr. 21-25. Even though the ALJ may not have labeled Plaintiff's "chronic pain syndrome" as a severe impairment, the decision reflects the ALJ's consideration of Plaintiff's chronic pain and evidences the RFC would not have changed even if the diagnosis was included as a severe impairment in Step Two.

Accordingly, Plaintiff's argument that the ALJ's decision should be reversed on account of the ALJ's failure to consider chronic pain at Step Two of the sequential analysis will be denied because the ALJ properly incorporated Plaintiff's chronic pain as a part of her discussion and formulation of the RFC.

**B. Credibility Assessment**

Plaintiff additionally argues that the ALJ's "credibility assessment" was deficient because of the ALJ's failure to consider Plaintiff's chronic pain syndrome and failure "to consider Plaintiff's stellar work history," which included "nearly 30 years of covered earnings prior to his alleged onset of disability." ECF No. 13 at 14-15.

As an initial matter, Social Security Ruling 16-3p[3] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."). This Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) which previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the

---

[3] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The regulations provide that in evaluating the intensity and persistence of symptoms, "[w]e will consider all of the evidence presented, including information about your prior work record." *See* 20 C.F.R. § 404.1529(c)(3). However, a good work history is neither the sole nor the determinative factor in establishing consistency, but rather an ALJ may find other reasons discrediting a claimant's consistency, "such as a consideration of a claimant's "daily activities, the limited findings on examination, and the lack of any functional limitations by examining physicians." *Moore v. Saul*, 2020 WL 5632454, at *7 (E.D. Mo. Sept. 21, 2020), *aff'd*, 849 F. App'x 615 (8th Cir. 2021).

As the Commissioner points out, the ALJ expressly stated that she considered all of Plaintiff's symptoms under the requirements of 20 C.F.R. §§ 404.1529, 416.929, which essentially codified the *Polaski* factors. More importantly, the determination itself is reflective of the ALJ's consideration of the consistency of Plaintiff's allegations. A good work history does not negate other consistency findings made by an ALJ. *Moore v. Saul*, 2020 WL 5632454, at *7 (E.D. Mo. Sept. 21, 2020), *aff'd*, 849 F. App'x 615 (8th Cir. 2021). For example, the ALJ

17

discussed Plaintiff's activities of daily living noting that although he reported being limited in his abilities to cook, clean, bathe, and dress himself, he was able to live alone with some periodic assistance from his girlfriend. Tr. 23. The ALJ additionally noted that at the consultative examination, Plaintiff had no difficulty grasping objects and was able to put on and remove his shoes without difficulty, contrary to claims he later made to his occupational therapy providers. *Id.* Further, Plaintiff reported to his treatment providers that he experienced functional improvements in his daily living activities due to techniques learned in occupational therapy, suggesting greater functional abilities than he offered in his testimony. Tr. 23.

      The ALJ considered at length Plaintiff's complaints of pain and related treatment records, including the duration, frequency, and intensity of the symptoms, and the inconsistencies between his reports of pain and physician observations during physical examination. The ALJ took note of his treating physician's recommendation to treat him conservatively, and that the medical recommendations, such as seeing an orthopedic specialist and seeking pain injections, were not followed by Plaintiff. *See Robinson v. Sullivan*, 956 F.2d 936, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain); *Tuttle v. Barnhart*, 130 F. App'x 60, 61 (8th Cir. 2005) ("[T]he ALJ properly discredited [Plaintiff] based on her failure to comply with recommended treatment."). The fact that Plaintiff used an ambulation device that was not recommended by a physician, but was rather given to him by his mother was also an appropriate consideration. *See* SSR 96-9p ("[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed").

18

The ALJ also considered the inconsistencies in the record, including the fact that Plaintiff continued to work years after the work-related accident in 1996 causing his low and back shoulder pain, a work-related accident in 2005 causing knee pain, and a torn meniscus from 2006 from falling on ice. Tr. 19. The ALJ notes he worked, albeit not full time, for a period after his alleged onset date. Tr. 18. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls extreme fatigue, Van Vickle continued working for over four years."); *Barker v. Saul*, 2019 WL 4600406, at *4 (E.D. Mo. Sept. 23, 2019) ("While the ALJ found that Plaintiff's work activity after his alleged disability onset date did not constitute disqualifying substantial gainful activity, it was nevertheless inconsistent with his claim that he was unable to do any work after [the alleged onset date]"). Thus, the ALJ was aware of the nature and extent of Plaintiff's work history. The fact that the ALJ did not specifically mention Plaintiff's "stellar" work history in assessing his subjective complaints "reflects, at most, harmless opinion-writing error." *Glenn B. v. Kijakazi*, 2022 WL 2527798, at *9 (E.D. Mo. July 7, 2022).

Assessing a Social Security claimant's subjective complaints "is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citing *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003)). The ALJ is not required to credit the claimant's subjective complaints when they are inconsistent with the record as a whole. *See Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020); *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). As long as the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment. This Court also defers to the ALJ's judgment in this case. The ALJ's decision considered all relevant evidence in the record that supported and detracted from Plaintiff's subjective complaints. Further, the ALJ

19

expressly stated that the determination considered the factors articulated in 20 C.F.R. 404.1529(c)(3). Thus, the Court finds no error in the ALJ's analysis of Plaintiff's work history or the consistency of Plaintiff's allegations with the other evidence.

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole and contains no legal errors.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Robbyne Jones's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Martin J. O'Malley for Kilolo Kijakazi in the court record of this case.

So Ordered this 29th day of January, 2024.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE